UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MASTERSON MARKETING, INC., | Civil No. 02-CV-2028-L(CAB) |
| Plaintiff, | **ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT [doc. # 214]** |
| v. | |
| KSL RECREATION CORPORATION, *et al.*, | |
| Defendants. | |

Defendants[1] (collectively "KSL defendants") move for partial summary judgment on the issue of infringement with respect to a photograph taken after the expiration of certain agreements between the parties, and indirect profits as a result of certain co-defendants' (collectively "E&H defendants")[2] use of plaintiff's copyrighted images on their websites.

---

[1] The moving KSL defendants include KSL Biltmore Resorts, Inc., KSL Recreation Corporation; Jobing.com; Gannett, Inc.; America West Vacations; Spa Finder Travel Arrangements, Ltd.; Spring Training Tours; American Express Company; The Leisure Company; and Internet Publishing Corporation.

[2] Defendants Hotel Discounts, LP; Hotel Reservations Network; America's Travel Network; Any Hotel Anywhere; Travel Golf West; World Res, Inc.; Carlson Leisure Group; Classic Custom Vacations; ClickCity.com' Epinions; Expedia, Inc.; Groovy Travel; Hotels Online; The Travel Company Corporation; Nota Bene Publishing, Ltd.; Absolute Engine,LLC; Automatit, Inc.; and Sunfinder Vacations have filed a notice of joinder [doc. #219] and an amended notice of joinder [doc. #222] in the KSL defendants' motion for partial summary judgment [doc. #214]. The Court notes that in their motion for partial summary judgment, the

Plaintiff opposes the KSL defendants' motion. The matter has been fully briefed.

## Factual Background

Plaintiff Masterson Marketing, Inc. ("Masterson") filed this action alleging copyright infringement and breach of contract based upon Agency Agreements and Licensing Agreements entered into with the Arizona Biltmore Resort & Spa ("Resort") for, *inter alia*, plaintiff's taking of various photos of the Resort. Relevant to the current motion, plaintiff also contends that defendants re-created plaintiff's photograph of Squaw Peak, now known as Piestewa Peak, and the Resort's lawn taken from the vantage point of the Resort's rooftop. The alleged duplication of the image, according to plaintiff, entitles him to copyright infringement damages.

Plaintiff also seeks disgorgement of KSL defendants' profits based on the E&H defendants' alleged infringement, *i.e.,* the E&H defendants' use on various travel websites of plaintiff's images obtained from the KSL defendants.

The KSL defendants move for partial summary judgment on these two claims.

## Summary Judgment Standard

Federal Rule of Civil Procedure 56 empowers the court to enter summary judgment on factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 327 (1986). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material when, under the substantive governing law, it affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).

The party moving for summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party does not have the burden of proof at trial, it may carry its initial burden by "produc[ing] evidence

---

KSL defendants term the E&H defendants as "third-parties." For purposes of this motion, the court refers to the non-moving defendants who have joined in KSL defendants' motion for partial summary judgment as the "E&H defendants."

negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000). When the moving party bears the burden of proof on an issue — whether on a claim for relief or an affirmative defense — the party "must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in its favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986); *see S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

If the moving party fails to discharge its initial burden of production, summary judgment must be denied and the court need not consider the nonmoving party's evidence, even if the nonmoving party bears the burden of persuasion at trial. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159-60 (1970); *Nissan Fire*, 210 F.3d at 1102-03. When the moving party carries its initial burden of production, the nonmoving party cannot "rest upon mere allegation or denials of his pleading." *Anderson*, 477 U.S. at 256. Rather, the non-movant must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotations omitted); *Anderson*, 477 U.S. at 256; *Nissan Fire*, 210 F.3d at 1103.

A "genuine issue" of material fact arises if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). When ruling on a summary judgment motion, the court cannot engage in credibility determinations or weighing of the evidence; these are functions for the jury. *Anderson*, 477 U.S. at 255; *Playboy Enters., Inc. v. Welles*, 279 F.3d 796, 800 (9th Cir. 2002). The court must view the evidence in the light most favorable to the nonmoving party, and draw all reasonable inferences in favor of the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Gibson v. County of Washoe, Nev.*, 290 F.3d 1175, 1180 (9th Cir. 2002), *cert. denied*, 537 U.S. 1106 (2003). The court is not required "to scour the record in search of a genuine issue of triable

fact," *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996), but rather "may limit its review to the documents submitted for purposes of summary judgment and those parts of the record specifically referenced therein." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1030 (9th Cir. 2001).

**DISCUSSION**

**1.    Copyright Infringement**

Plaintiff contends that after KSL terminated the Licensing Agreement with plaintiff,[3] the KSL defendants hired another photographer, Evan Schiller ("Schiller"), to duplicate plaintiff's original photo of Squaw Peak taken from the Arizona Biltmore grounds thereby infringing plaintiff's work. The KSL defendants argue, however, that although photographs receive copyright protection, the law protects the creative expression of an idea and not the idea itself. Therefore, according to defendants, their photo of Squaw Peak does not infringe plaintiff's photo unless it is virtually identical and it is not.

"Although the subject matter of a photograph, itself, is not copyrightable, a photographer may create a pose, select lighting and angle and adorn a subject in such a manner as to be copyrightable. The copyrightable elements of an original photographic composition that are capable of supporting registration may include such things as time and light exposure, camera angle or perspective achieved, deployment of light and shadow from natural or artificial light sources, and the arrangement or disposition of persons, scenery, or other subjects depicted in the photograph." COPYRIGHT REGISTRATION PRACTICE, Second Edition, § 15:10. Thus, a photograph does not and cannot create a copyright in the underlying subject matter. The subject matter is factual material, available for use by all photographers. For photos of existing objects, even relatively small differences in two photos may exclude copyright infringement. But how different from the original photo a second photograph must be in order to be something other than an infringing copy may present difficult questions, particularly if the photographs deal with the same natural object – in this case, Squaw Peak and the lawn of the Arizona Biltmore Resort.

---

[3] Plaintiff's "Squaw Peak" image at issue here was taken "prior to any contractual agreement between Masterson and the Biltmore." (Plaintiff's Opp. at 3).

In *ETS-Hokin v. Skyy Spirits, Inc.*, following an earlier holding that "product shots" of a vodka bottle were copyrightable based on selection of angle, lighting and other factors, the Court held that there was no infringement of the copyrighted photos. *Ets-Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763, 765-66 (9th Cir. 2003). The Ninth Circuit concluded that the similarities in the works resulted from the subject matter, rather than from any copying. *Id.* (citation omitted)(the features that "are treated like ideas and are therefore not protected by copyright" are those that are, "as a practical matter indispensable, or at least standard, in the treatment of a given idea." ). Similarly, in *Sahuc v. Tucker*, 300 F. Supp. 2d 461 (E.D. La. 2004) the court held that actionable copying does not take place when a photographer simply takes a picture of the subject matter depicted in a copyrighted photograph so long as the second photograph does not copy original aspects of the copyrighted work. The subject matter of a photograph of a public object or scene, *i.e.* the object or scene actually being photographed, is not of itself copyrightable. A photographer cannot obtain an exclusive copyright in the subject matter of a particular photograph if that subject matter is public property, *e.g.* the Washington Monument or a natural object such as Squaw Peak and the lawn of the Arizona Biltmore Resort.

Plaintiff contends that his creative decisions include taking the photograph from the roof of the Biltmore at a particular time of day when there would be more desirable cross lighting. (Opp. at 3-4). Plaintiff states he selected a wide-angle 21mm lens that would provide a photo of the expanse of the hotel grounds along with the entire Squaw Peak range as a backdrop. *Id.* Plaintiff also notes that he chose to photograph the scene in a horizontal rather than vertical format to enhance the image of the Biltmore property as expansive. *Id.* Defendants contend, and plaintiff agrees, that plaintiff extensively retouched his image by, *inter alia*, image sharpening; color adjustment, balance and saturation; and image cloning. (Opp. at 4). Defendants argue that there are at least 19 differences between Schiller's photo and Masterson's image and those differences separate the originality of Masterson's image from Schiller's photo.

Schiller's photo, taken at the request of the KSL defendants, is a Resort lawn shot with Squaw Peak looming in the background. Schiller took the photo from the roof of the Arizona Biltmore. Defendants contend that Schiller's image is "simply a photograph of an existing

object" that has not been retouched as plaintiff's image has been. (Reply at 2). In his supplemental declaration, Schiller states that he did not perform color adjustment, dodging-burning or image sharpening and therefore, his photo is lighter and more naturalistic than plaintiff's image. (Schiller Supp. Dec., ¶ 2).

Plaintiff's and defendants' photographs depict a similar idea about the Arizona Biltmore Hotel property with Squaw Peak rising in the background. But as noted above, ideas are never copyrightable – only the original expression of those ideas is protected by copyright law. It is not disputed that plaintiff's heavily retouched image is subject to copyright protection. But where a photographer takes a picture of the subject matter depicted in a copyrighted photograph, there is no infringement if the second photograph does not copy the original aspects of the copyrighted work. Schiller's unretouched photo merely captures the lawn of the Resort taken from the vantage point of the Resort's roof with Squaw Peak in the background. Removing the original expression found in plaintiff's image and comparing those aspects with defendants' photo, it is apparent that defendants' photo of the Resort's grounds and Squaw Peak does not copy the original, distinct features of plaintiff's image. The fact that both Masterson's and defendants' photos were taken from the same vantage point and are in a horizontal rather than vertical format is insufficient as a matter of law to demonstrate copying of the original aspects of Masterson's image by defendants. Accordingly, defendants are entitled to summary judgment on plaintiff's claim of copyright infringement.

### 2. Lost Profits for Co-Defendants' Use of Images[4]

A plaintiff may recover "any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." 17 U.S.C. § 504(b). In order to recover an alleged infringer's profits, the plaintiff must establish a causal connection between the alleged infringer's revenues and the alleged infringement. *Polar Bear Prods., Inc. v. Timex Corp.*, 348 F.3d 700, 708 (9th Cir. 2004).

---

[4] The Court has previously determined that plaintiff failed to offer any nonspeculative evidence creating a triable issue of fact showing that defendants' alleged infringement at least partially caused the profits that the infringer generated as a result of the infringement. *See* Order filed March 9, 2007 [doc. #237].

Here, plaintiff is seeking indirect profits[5] from the KSL defendants for the E&H defendants[6] alleged infringing use of plaintiff's images.  But defendants assert that plaintiff has not, and cannot, establish the requisite causal connection between the alleged infringement by the E&H defendants and the KSL defendants' revenues because the KSL defendants did not benefit, directly or indirectly, from the acts of the E&H defendants.

Defendants, citing *Polar Bear*, further argue that even if causation could be established, a claim for indirect profits will fail if the relationship between the purported infringement and the profits is too speculative.  *Id.* at 710-711; *see also Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522-25 (4th Cir. 2003)(summary judgment is appropriate if "despite the existence of a conceivable connection [between the infringement and recovery sought, the plaintiff] offered only speculation as to the existence of a causal link between the infringement and the revenues.")  In other words, and as both parties acknowledge, in order "to survive summary judgment on a demand for indirect profits pursuant to § 504(b), a copyright holder must proffer sufficient non-speculative evidence to support a causal relationship between the infringement and the profits generated indirectly from such an infringement." *Mackie v. Rieser*, 296 F.3d 909, 915-16 (9th Cir. 2002).

### 2.   Causal Relationship

Plaintiff contends he has demonstrated the nexus between the E&H defendants' infringement and the KSL defendants' profits.  Plaintiff first relies on a letter he received from Randolph Wilcott, the Director of Marketing for the Arizona Biltmore in which Wilcott stated:

> I just received our year end sales report.  Our new advertising direction has increased our leisure and group occupancy by 38% over the past nine months.  We at the Arizona Biltmore Sales and Marketing Department tip our hats to Masterson Marketing.

---

[5] "Section 504(b) does not differentiate between "direct profits" – those that are generated by selling an infringing product – and "indirect profits" – revenue that has a more attenuated nexus to the infringement." *Mackie v. Rieser*, 296 F.3d 909, 914 (9th Cir. 2002).  In other words, indirect profits arise when the alleged infringer does not sell the copyrighted work itself but rather uses the copyrighted work to sell another product. *Andreas v. Volkwagen of America, Inc.*, 336 F.3d 789 (8th Cir. 2003).

(Plaintiff's Exh. 1).  Although plaintiff believes this note "clearly" shows the infringing use of his images caused defendants' increased profits, it does not.  The Wilcott note is dated May 17, 2000, which is within the time period of the parties' Licensing Agreement and approximately a year and a half prior to the termination of the Licensing Agreement.  Only after the termination of the Licensing Agreement could any alleged infringing activity occur.  Thus, the Wilcott note cannot demonstrate a connection between the alleged E&H defendants' infringement and the KSL defendants' profits.  Moreover, the Wilcott note does not assert a connection between the use of plaintiff's images and the KSL defendants' profits.  Rather, the note speaks of "[o]ur new marketing direction" and not the specific use of plaintiff's images that were incorporated in the E&H defendants' advertising. *Id.*

Plaintiff also relies on his own expert report in support of his position that there is a causal connection between the E&H defendants' use of his images and the KSL defendants' profits.  The Court notes that a party who is otherwise qualified as an expert may testify as an expert witness in his own case regardless of concerns that the party is plainly self-interested. 3 Christopher B. Mueller & Laird C. Kirkpatrick, FEDERAL EVIDENCE § 349, p. 606-07 (2d ed. 1994).  But the party offering expert testimony has the burden of laying a foundation for its admission. FED. R. EVID. 702.  As defendants correctly note, plaintiff has not been qualified as an expert in marketing and/or damages, in this case, profits attributable to alleged infringement.

Under Federal Rule of Evidence 702,

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FED. R. EVID. 702.  Although not making a determination of whether or not plaintiff is qualified as an expert for purposes of trial, in cases of proffered expert testimony, the Court must find that it is properly grounded, well-reasoned, and not speculative before it can be admitted.  The expert's testimony must be grounded in an accepted body of learning or experience in the expert's field, and the expert must explain how the conclusion is so grounded.  *See, e.g.,*

AMERICAN COLLEGE OF TRIAL LAWYERS, STANDARDS AND PROCEDURES FOR DETERMINING THE ADMISSIBILITY OF EXPERT TESTIMONY AFTER DAUBERT, 157 F.R.D. 571, 579 (1994) ("[W]hether the testimony concerns economic principles, accounting standards, property valuation or other non-scientific subjects, it should be evaluated by reference to the 'knowledge and experience' of that particular field.").  Further, the testimony must be the product of reliable principles and methods that are reliably applied to the facts of the case.

There are several problems associated with the expert report prepared by plaintiff.  The most significant being the lack of a stated methodology that supports his various conclusions, *e.g.,* "64% of [the Arizona Biltmore Resort's] sales have been directly influenced by [Masterson's] images of the hotel; 32% of all sales are directly attributed to the use of the images at issue," (Masterson Report at 7); "[i]t is safe to assume that images book rooms and generate revenue, *Id.* at 3; "The 2002 PhoCusWright Report found that '50% of US Online Travelers look online, but book offline.'  This supports the position that at least 50% of direct sales numbers are generated by the website image presentation." *Id.* at 7.  These opinions are not supported by any sort of reliable principle and/or methodology but are rather conclusions based on incomplete suppositions.  Although plaintiff appears to recognize that "other factors can have an influence on decision making, such as past experiences, location, amenities, etc.," (*Id.* at 8), plaintiff, as a purported expert, does not offer any explanation for or means of determining how those other factors impact revenue for the Resort vis-a-vis the use of his images which calls into question plaintiff's conclusion that there is any nexus between the use of his images and the KSL defendants' profits.  Plaintiff's expert report offers nothing more than speculative arguments and figures to support plaintiff's conclusion of a causal relationship between the infringement and the indirect profits generated by the E&H defendants for the KSL defendants.

Here, there is no admissible evidence establishing that the alleged use of the infringing images actually caused the public to stay at the Resort thereby generating profits for the KSL defendants.  Plaintiff has provided no non-speculative evidence concerning a causal relationship between the alleged infringing use of his images in E&H defendants' advertising and an increase the KSL defendants' profits.  Accordingly, defendants' motion for summary judgment on this

1 claim is appropriately granted.

## CONCLUSION

Based on the foregoing, **IT IS ORDERED** granting defendants' motion for partial summary judgment [doc. #214]. **IT IS FURTHER ORDERED** that a Mandatory Settlement Conference shall be conducted on May 22, 2007, at 2:00 p.m. in the chambers of Magistrate Judge Cathy Ann Bencivengo. Counsel shall submit confidential settlement statements directly to chambers no later than May 15, 2007. **Settlement conference briefs shall not be filed with the Clerk of the Court, nor shall they be served on opposing counsel.** Pursuant to Local Civil Rule 16.3, all party representatives and claims adjusters for insured defendants with full and unlimited authority to negotiate and enter into a binding settlement, as well as the principal attorney(s) responsible for the litigation, must be present and legally and factually prepared to discuss and resolve the case at the mandatory settlement conference. Retained outside corporate counsel shall not appear on behalf of a corporation as the party who has the authority to negotiate and enter into a settlement. Failure to attend the conference or obtain proper excuse will be considered grounds for sanctions. **IT IS SO ORDERED.**

**IT IS SO ORDERED.**

DATED: April 13, 2007

M. James Lorenz
United States District Court Judge

COPY TO:

HON. CATHY ANN BENCIVENGO
UNITED STATES MAGISTRATE JUDGE

ALL PARTIES/COUNSEL