Grant G. Teeple, Esq. (SB #144760)
Eric M. Hart, Esq. (SB #221860)
TEEPLE HALL, LLP
9255 Towne Centre Drive, Suite 500
San Diego, CA 92121
Telephone: (858) 622-7878
Facsimile: (858) 622-0411

Attorneys for Plaintiff,
MASTERSON MARKETING, INC.

# U. S. DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MASTERSON MARKETING, INC. a California Corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>KSL RECREATION CORPORATION, a Delaware Corporation; *et al.*<br><br>Defendants. | CASE NO: 02 CV 02028 L (CAB)<br><br>**MASTERSON MARKERTING, INC.'S OPPOSITION TO DEFENDANTS'** *DAUBERT* **MOTION TO EXCLUDE EXPERT REPORT AND TESTIMONDY OF JEFF SEDLICK** |

## I. INTRODUCTION

Defendants untimely *Daubert* motion is a canned brief that Defense Counsel likely files in every case with the hope that something may stick from the the shotgun approach and to improperly condition the Court. As discussed in detail below, Jeff Sedlick is qualified to testify, and will bring significant insight to the Court on the customs and practices in the advertising world relating to the licensing of images, and how that relates ultimately to the damages suffered by Masterson as a result

of Defendants' admitted infringement of its images.

## II. DEFENDANTS' MOTION IS UNTIMELY AND MUST NOT BE RULED ON

The Court's Fifth Revised Case Management Conference Order Regulating Discovery and Other Pretrial Proceedings, which was signed by Hon. Cathy Ann Bencivengo, clearly states: "All motions regarding the admissibility of expert testimony under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 570 (1993) and related cases shall be FILED on or before **July 16, 2007**." (emphasis in original.)

Scheduling orders and their enforcement "are regarded as the essential mechanism for cases becoming trial-ready in an efficient, just and certain manner. The control of these schedules is deliberately reposed in the court, and not in counsel, so this end my be achieved." *Rouse v. Famers State Bank of Jewell, Iowa,* 866 F.Supp. 1191, 1198 (N.D. Iowa 1994.) A scheduling order is "not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Id.* at 1198, quoting *Gestener Corp. v. Case Equip. Co.*, 108 F.R.D. 138, 141 (D.ME. 1985). Accordingly, in the 9th Circuit, court's may deny as untimely motions filed after the scheduling order cut-off date where no request to modify the order has been made. *Johnson v. Mammoth Recreatons, Inc.*, 975 F.2d 604, 608-609 (9th Cir. 1992) citing *U.S. Dominator, Inc. v. Factory Ship Robert E. Resoff*, 768 F.2d 1099, 1104 (9th Cir. 1985). This is exactly the situation here, as Defendants have brought their *Daubert* motion more than three months after the cut-off date, and have failed to seek leave to do so. Accordingly, the Court should deny Defendants motion as being untimely.

The Court may also consider Defendants' *Daubert* motion as a *de facto* motion to amend the scheduling order. Pursuant to Fed.R.Civ.P. 16(b), scheduling orders entered before the final pretrial conference may be modified upon a showing of "good cause." "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Rouse v. Famers State Bank*

*of Jewell, Iowa, supra*, 866 F.Supp. at 1199. "[C]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief. Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification. If that party was not diligent, the inquiry should end." *Id.* at 1199, emphasis added. Through their motion, Defendants do not even attempt to try to establish diligence or good cause. Accordingly, the Court's analysis should end, and their motion should be denied.

### III.    JEFF SEDLICK MUST BE ALLOWED TO TESTIFY

If the Court is going to actually rule on Defendants' motion, it should see that the motion is really not a *Duabert* motion, but rather is an improper attempt to condition the Court regarding Jeff Sedlick's testimony and to argue why their experts' opinions are superior. As discussed below, all of Defendants' arguments fail.

#### A.    JEFF SEDLICK IS QUALIFIED TO BE AN EXPERT IN THIS CASE

Despite Defendants' attacks on Mr. Sedlick's qualifications, Mr. Sedlick is more than qualified to testify in this case. Section I of Jeff Sedlick's report (Defendant's Exhibit A) sets forth Mr. Sedlick's qualifications. As the Court can read, Mr. Sedlick has 20 years of commercial photography experience, as well has holding significant leadership roles with numerous trade organizations, provides him with a substantial basis on knowledge on the customs in the industry regarding licensing practices, the impact to a photographer as a result of copyright infringement, and the value of images. There is no better witness to discuss these issues, than someone who takes his own pictures, licenses his pictures in commercial settings, and advises others on how to license or sell their images. That is exactly what Jeff Sedlick is. Given that the trial court "has wide discretion in determining the competency of a witness as an expert and the relevancy of his testimony with respect

Teeple Hall, LLP
9255 Towne Centre
Drive
Suite 500
San Diego, CA
92121-3038

3

CASE NO. 02 CV 0208K (LAB)

to a particular subject, it should be without question that this Court determines that Mr. Sedlick is sufficiently qualified to testify. *United States v. Stevenson*, 6 F.3d 1262, 1267 (7th Cir. 1993).

Ironically, much of Defendants' attack on Mr. Sedlick's opinions comes from the fact that his opinions differ from their own experts. Defendants argue that because their experts came to different conclusions than Mr. Sedlick, he must automatically be wrong and that his opinions have no basis in reality. Defendants make this argument without providing any supporting evidence to show that validity of their experts' opinions. Such an argument is flawed in that it summarily concludes that their experts' experience and knowledge is more reliable than Mr. Sedlick's. Taken such a position is fine for closing argument, but should not be used as a basis of a *Daubert* motion. It simply cannot be the law that where experts on either side of a case differ in opinion, one side as a matter of law must be excluded as expressing inadmissible opinions. If that were the case, all lawsuits requiring expert opinions would effectively be decided by the judge prior to hearing testimony because one side's expert was excluded.

To say that Mr. Sedlick does not have the knowledge, skill or experience to assist the Court, who is the trier of fact in this case, about the value of Masterson's images, which is based on the custom and practice in the industry that he is a part of, is illogical, and serves as another example of Defendants wanting to have it both ways, as their experts, are also expressing opinions about value based on their experience. If the Court concludes that Mr. Sedlick is not qualified to testify, then the Court would essentially be making an announcement that there is no person who is qualified to testify about the value of images and licensing practices in a copyright case.

**B.   JEFF SEDLICK'S OPINIONS ARE RELIABLE**

The *Daubert* Court provided a non-exclusive set of factors to aid trial judges in the determination of whether an expert's opinion is admissible, including: "(1) whether the scientific

theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review or publication; (3) whether there is a known or potential error rate; and (4) whether the theory or technique is generally accepted in the relevant scientific community." *DSU Medical Corp. v. JMS Co., Ltd.*, 296 F.Supp.2d 1140, 1146 (N.D. Cal. 2003). These factors were not intended to be exhaustive nor applied in every case. *Id* at 1147. "In cases involving non-scientific testimony, the district courts may consider the *Daubert* factors in assessing the reliability of the proffered expert testimony, but they are not limited to those factors in determining reliability. *Id* at 1147.

> District courts have broad discretion in determining both how to assess reliability and whether reliability exists. The factors the Court should consider in deciding how to make this determination will depend on the specific nature of the testimony to be presented and the facts of the particular case. At least one court has noted that the *Daubert* factors may be particularly inapplicable when evaluating expert testimony on business transactions. *Id* at 1147.

When considering the "gatekeeper" function delineated in *Daubert*, "the trial judge is limited to considering the methodologies relied upon by the expert, not the conclusions reached by the expert. It is not the trial court's role to determine whether the expert's conclusions are actually correct. The certainty of the scientific results are matters of weight for the jury." *Id* at 1147.

As the expert issues in this case relate to licensing fees and damages resulting from copyright infringement and not on some scientific issue, the Court should not apply the factors set forth *Daubert*. Rather, the Court should recognize that placing a value on artwork is not exact, and thus the Court should be flexible in evaluating the methodologies used by Mr. Sedlick. As is discussed below, those methodologies are reliable.

### 1.     The Multiplier Used By Sedlick Is Reliable

Here, one "methodology" that Defendants attack is the use of scarcity multiplier to determine

Teeple Hall, LLP
9255 Towne Centre Drive
Suite 500
San Diego, CA
92121-3038

CASE NO. 02 CV 0208K (LAB)

the amount of damages Masterson has suffered as a result of Defendants infringement of its images. This attack is not based on the complete record. Defendants conveniently left out the rest of Mr. Sedlick's testimony as to why he selected the multiplier. When this section is read in its entirety, it should become clear to the Court as to why scarcity is such an important component to the value of the image. In fact it is a vital element that Mr. Sedlick teaches to others in his professional capacity. (Exhibit 1.) This is not some element that Mr. Sedlick made up for this case. In addition, Defendants' argument that Mr. Sedlick's use of the multiplier is unreliable ignores that under *Daubert* "[a]n expert is permitted wide latitude to offer opinions, including those that are not based on first hand knowledge or observations." *Daubert v. Merrill Dow Pharma., Inc.*, 509 U.S. 579, 592 (1993). Under that premise, it is perfectly acceptable for an expert to apply his knowledge of the industry with the information provided in the case to reach a conclusion, and that such a conclusion is consistent with FRE 702. See *Inline Connection Corp. v. AOL Time Warner Inc.*, 472 F.Supp.2d 604, 613 (D. Del. 2007).

2. **Mr. Sedlick's Use Of A "Scarcity Multiplier" Is Consistent With Principles Of Calculating Actual Damages**

In their typical fashion, Defendants manipulate Mr. Sedlick's report in the *Strauss* matter so as mislead the Court into believing his prior opinions are in conflict with his opinions in this case. In reality, Mr. Sedlick's opinion in the Strauss matter has been consistent and in line with the law. Even though this attack ultimately fails, as is discussed below, the Court should recognizes that it is an attack on Mr. Sedlick's credibility, which is not proper for a *Daubert* motion.

In the Strauss matter, Sedlick's discussion regarding "multipliers" is in direct response to the opinion expressed by Jane Kinne that a multiplier of "$900,000 would be in order now that the photographer has had to incur the time and expense involved in a federal lawsuit", and not on an a

6

Teeple Hall, LLP
9255 Towne Centre Drive
Suite 500
San Diego, CA
92121-3038

CASE NO. 02 CV 0208K (LAB)

"scarcity multiplier". (Defendants' Exhibit E, page 17). The "multiplier" in the *Strauss* case that Mr. Sedlick spoke out against was used to compensate for litigation expenses and as a punishment. In rejecting use of this type of multiplier, Mr. Sedlick accurately recognizes that attorney's fees and costs are items that are addressed in the Copyright Act and are not part of "actual damages".

In support of his opinion that application of the type of multiplier discussed in *Strauss* is not permissible, Mr. Sedlick cites to *Barrera v. Brooklyn Music, Ltd.*, 346 F.Supp.2d 400 (S.D.N.Y. 2004), which confirms that a multiplier can only be used when it represents compensation for an injury caused by the defendants infringing activity. Interestingly, in *Barrera*, the expert in that case based his calculation of a reasonable license fee for the use of the photograph on such factors as the type, of use, size of use, circulation, the type of media in which the photograph was reproduced, the size of the image of the photograph in relation to the materials in which it is used, the geographic scope of the market in which the infringing use was made, and whether the use of the photograph contains a "credit line" that completely and accurately identifies the author of the photograph. *Id* at 409-410.

The fact that the expert in *Barrera*, considered circulation, in other words scarcity, as an important element supports Mr. Sedlick's opinion. More important, the court in *Barrera*, approved the use of a triple multiplier in a calculation of actual damages for the failure to include a proper credit to the photograph in the use of the infringing image. The court found that the inclusion of the credit line would likely have significant value to a photographer, in light of the additional notoriety and business opportunities the credit line might bring. *Id* at 410. The court in *Barrera* approved the use of the multiplier because the multiplier was tied to a factor used to determine "actual damages" and not as punishment or to compensate for the need to file suit. In the present case, Mr. Sedlick's use of the "scarcity multiplier" is equally tied to the calculation of "actual damages" or a

determination of fair market value and thus is proper.

### 3. Defendants' Other Inappropriate Attempts To Condition The Court Also Fail

Defendants motion also attacks Mr. Sedlick's opinion because he failed to consider the fact that Masterson "placed a valued of only $10,000 on a complete copyright buy-out of similar photographs". This argument is flawed in many ways. First, this is again an improper attack on Mr. Sedlick's credibility, which is not proper in a *Daubert* motion. Second, the argument lacks foundation, in that there is no evidence before the Court to support this conclusion, nor are the pictures before the Court for it to make a determination that these are "similar" pictures in quality and subject matter. Finally, even if this was true, the argument ignores Masterson would have been motivated to allow for a buy out to take place at such a low price as a result of the promise by Randy Wilcott that Masterson would obtain the Biltmore account, which would result in Masterson receiving hundreds of thousands of dollars in business and licensing fees, if that price was met. Accordingly, it is more appropriate for these issues to be discussed by way of closing argument after all the evidence has been heard, including the testimony of Jeff Sedlick.

### C. DEFENDANTS' ARGUMENT REGARDING LEGAL CONCLUSIONS IS MOOT

Defendants' complaint that Mr. Sedlick has expressed opinions that are improper legal conclusions is now moot. Defendants have stipulated to the fact that they infringed on Masterson's copyrights. Pursuant to the Stipulation, issues of liability are no longer an issue in the case. The fact that Mr. Sedlick opined that Defendants infringed on Masterson's copyrights is irrelevant to the issue of liability, but it does bear weight to the issue of his credibility, as he was right about that fact, and is further evidence that he is the appropriate person to testify regarding damages for such an infringement.

Teeple Hall, LLP
9255 Towne Centre Drive
Suite 500
San Diego, CA
92121-3038

CASE NO. 02 CV 0208K (LAB)

### D. DEFENDANTS' ARGUMENT REGARDING THE LOST IMAGES FAILS

Defendants' motion reiterates issues raised in a separate motion in limine related to lost images. Masterson does not wish to waste the Court's time discussing this issue in two places. Accordingly, Masterson incorporates the arguments made in its opposition to that motion, and reemphasis the maxim that there is no wrong without a remedy. Based on the fact that the Court has already ruled that the lost images are equivalent to the rights set forth in the Copyright Act, Mr. Sedlick must be allowed to testify as to the value of the lost images.

### IV. CONCLUSION

The Court should not be fooled by Defendant' improper attempts to condition the Court against Mr. Sedlick. Once the Court has an opportunity to hear Mr. Sedlick's testimony, it will learn that his opinions are solid, supported by industry practice, and directly related to the facts of this case.

Dated: November 19, 2007

TEEPLE HALL, LLP

By: ___/s/ Eric M. Hart___
Grant G. Teeple, Esq.
Eric M. Hart
Attorney for Plaintiff
Masterson Marketing, Inc.

Teeple Hall, LLP
9255 Towne Centre Drive
Suite 500
San Diego, CA
92121-3038

9

CASE NO. 02 CV 0208K (LAB)